Thurston STRONG, Plaintiff–Appellant,

v.

SOCIAL SECURITY ADMINISTRATION Defendant–Appellee.

No. 02–5604.

United States Court of Appeals, Sixth Circuit.

Feb. 3, 2004.

Wolodymyr Cybriwsky, Law Offices of Wolodymyr Cybriwsky, Prestonsburg, KY, for Plaintiff–Appellant.

John S. Osborn, III, Asst. U.S. Attorney, Lexington, KY, Elyse Sharfman, Nancy R. Bartlett, Asst. Reg. Counsel, Robert K. Gaskins, Dennis R. Williams, Mary Ann Sloan, Nancy Weiss, Charissa A. Ruel, Office of General Counsel, Atlanta, GA, for Defendant–Appellee.

Before GIBBONS and SUTTON, Circuit Judges; and TARNOW, District Judge.*

## OPINION

TARNOW, District Judge.

Plaintiff, Thurston Strong, appeals an order denying him summary judgment and granting summary judgment to the Commissioner of Social Security ("Commissioner") on his claim for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Appellant asserts that the Commissioner's decision to deny benefits was not supported by substantial evidence, but was instead based on incomplete and prejudicial considerations. Further, Claimant asserts that the Commissioner misapplied the law as to transferable skills of persons of advanced age and relied on flawed vocational testimony. For the reasons set forth below, we **AFFIRM** the district court's decision.

## I. BACKGROUND

### A. Factual Background

Thurston Strong has previously worked as a spray gun painter and coal loader operator, and has served in the army. He last worked as a coal loader operator from 1978 until 1982 when he claims to have become disabled at 56 years of age. He worked until being laid off from his mining

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

job when the mine was closed. A former supervisor has written a letter indicating that Claimant was not recalled to work because his back condition prevented him from doing his former job. Claimant attributes his disability to peptic ulcers, back pain, severe headaches, breathing difficulties, poor hearing and vision, and depression. He has a fourth grade education and has stated that he can read and write to some extent.

There is little medical or mental health evidence from the period of time during which Claimant was eligible to receive benefits, *viz.* from November 1, 1982 until December 31, 1987, when his insured status expired. The only medical data from this time is from December 1986. This data shows him to have been diagnosed with transient cerebral ischemia, secondary to smoking, and acute or chronic peptic ulcer disease that was accompanied by minimal esophageal reflux and was controlled with medication. There is no indication of any examination or treatment for mental health problems during this time. During the relevant period from 1982 until 1987, Claimant took out the garbage, fed family pets, washed dishes, visited with family, and maintained a small garden.

There is some medical evidence dating after the expiration of Claimant's insured status which refers to examination or treatment conducted during the relevant period. In 1996, a long-time treating physician, Dr. Cornett, wrote a letter indicating that a variety of health problems had disabled Claimant since approximately 1982 or 1983. Later, in 1999, Dr. Cornett wrote that he had given Claimant a shot for back pain in November of 1981. However, no records from Dr. Cornett are provided that date from the relevant time period.

In examinations conducted after 1993 when the initial claim was filed, Claimant reported to doctors that he had been experiencing serious back pain since the early 1980's, and that he had been experiencing, shortness of breath, headaches, difficulty in hearing, and depression for approximately that long.

There is extensive medical evidence pertaining to Claimant's condition as of 1993 and later. In 1993, Dr. Cornett wrote a letter stating that Claimant had peptic ulcer disease, lumbar syndrome, high anxiety, and depression and was not physically or mentally capable of productive work. Also in 1993, a consultative examination found that there was not any evidence of significant restrictions in Claimant's ability to sit, stand, move, lift, carry, stoop, bend, reach, travel, or handle objects. An x-ray of Claimant's spine showed good alignment, well-preserved intervertebral disc space, and the presence of a few bone spurs. In 1995, a consulting physician opined that Claimant could engage in mild to moderate physical activity. A consultative psychologist stated in 1995 that Claimant was suffering from dysthymia and had several non-exertional limitations. In 1996, two treating physicians indicated that Claimant could frequently lift and carry objects weighing 10 pounds and could work between three and five hours consecutively if permitted to alternate between sitting and standing.

At a hearing before an Administrative Law Judge ("ALJ") in March of 1999, a reviewing psychologist testified that from 1982 until 1993, Claimant did not suffer from any listing level mental impairment and had sufficient pace, concentration, and attention to perform work-related activities. At an August 1999 hearing, a reviewing specialist in internal medicine noted the "paucity of objective findings" as to Claimant's physical problems and stated that Claimant did not meet the disability listing requirements for the relevant time period.

## B. Procedural Background

In January of 1993, Claimant filed applications for benefits for Supplemental Security Income ("SSI") and DIB, both of which were denied initially and upon reconsideration. In May 1994, an ALJ found that the claimant was not disabled and the Appeals Council denied review. Claimant appealed to the district court, and the case was remanded back to the Social Security Administration upon motion by the Commissioner. Thereupon, the ALJ issued a partially favorable decision in June, 1996, finding Claimant eligible for SSI, with an onset of disability beginning on August 29, 1995. However, the ALJ denied the claim for DIB, finding that Claimant could perform a full range of medium work activity before December 31, 1987, his date of last insured. The Appeals Council upheld the decision to deny DIB, but found Claimant entitled to SSI as of January 11, 1993.

Claimant appealed this decision to the district court, and the case was remanded to the Administration. After hearings before an ALJ in March and August of 1999, the ALJ issued a decision on October 21, 1999 finding Claimant disabled as of January 11, 1993, thus entitling him to SSI benefits, but not DIB. The ALJ found that during the relevant period, Claimant could not have performed his past work but could have worked at a medium level of exertion in other jobs existing in significant numbers. Claimant again appealed to the district court, which granted summary judgment to the Commissioner on March 13, 2002, finding that the ALJ's decision was supported by substantial evidence.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review the decision of the District Court pursuant to 28 U.S.C. § 1291. The ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Review "is limited to determining whether there is substantial evidence in the record to support the findings." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir.1986). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Courts must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). Reviewing courts are not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir.1987). With these standards in mind, the Court must consider whether there was substantial evidence for the Commissioner's decision denying Strong disability insurance benefits for the period from November 1, 1982, the alleged onset of disability, until December 31, 1987, the date of last insured.

## III. ANALYSIS

### A. Legal framework for evaluating disability claims

A claimant carries the burden of proving an alleged disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). A person will be considered disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further,

an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot. considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

Under the familiar five-step analysis for evaluating disability claims, a claimant must first show that he or she is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I) & (b). Secondly, the claimant cannot be found disabled absent a demonstration of the existence of a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii) & (c). At the third step, the claimant will be found disabled regardless of other factors if he or she can demonstrate that her impairment meets the 12–month durational requirement and "meets or equals a listed impairment." 20 C.F.R. § 404.1520(a)(4)(iii) & (d). In the fourth step, when the impairment does not meet or equal a listed impairment, the claimant must prove that he or she cannot perform work done in the past. 20 C.F.R. § 404.1520(a)(4)(iv) & (e). At the fifth and final step, if the claimant's impairment is so severe that he or she cannot perform past work, then the claimant's age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. 20 C.F.R. § 404.1520(a)(4)(v) & (f). This work must be significantly available in the claimant's region of the country or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A). The burden of proof at this final step is upon the Commissioner. *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

**B. The District Court properly found that the Commissioner relied on substantial evidence in the denial of DIB**

■ Based on the absence of medical evidence tending to show disability during the insured time period and evidence tending to show that Claimant could have performed other jobs which were available in significant numbers, it is clear that the ALJ relied on substantial evidence in reaching his decision. Evidence of disability obtained after the expiration of insured status is generally of little probative value. *See Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 264 n. 6 (6th Cir. 1988). Here, even after the expiration of Claimant's insured status, medical evidence suggested his ability to engage in light to moderate work. But more importantly, as to the relevant time period, there is substantial evidence for the ALJ's conclusion that Claimant was capable of a limited range of medium level work. Claimant simply failed to present any contemporaneous medical evidence of disability from the relevant time period.

Although Dr. Cornett opined long after the relevant period that Claimant had been disabled during the relevant period, such a retrospective and conclusory opinion is not entitled to significant weight because it is not supported by relevant and objective evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(d)(2)-(3). Indeed, Claimant testified that Dr. Cornett did not complete any examination, such as an x-ray, MRI, or CAT scan. There is likewise no contemporaneous evidence as to Claimant's mental condition during this time. Claimant thus failed to carry his

burden of proving his disability for the relevant time period.

## C. The ALJ did not improperly consider the evidence or misapply the law

Claimant alleges that the ALJ improperly weighed the evidence by: 1) unfairly considering Claimant's smoking; 2) discounting Claimant's inability to afford medical care; and, 3) accepting flawed vocational testimony. Claimant further contends that sufficient evidence existed to find him disabled under the Medical–Vocational Guidelines or "Grids." *See* 20 C.F.R. pt. 404, subpt. P, app. 2. However, each of these complaints is without merit.

■ As to Claimant's first contention regarding improper prejudice towards Claimant's smoking, there is nothing in the record supporting any such inference. The record merely shows that the ALJ verified that Claimant knew that smoking was unhealthy and further elicited Claimant's admission that he was spending at least $100 per month for his habit. Such inquiry is relevant given that some of Claimant's health problems appear to have stemmed from his smoking a pack of cigarettes per day for forty years despite repeated advice from his doctors to quit. Further relevance is readily evident in light of Claimant's assertion that he did not have the money for medical examination or treatment during the relevant period.

■ The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir.1990). Here, Claimant was found not to be under a disabling condition due to the absence of diagnostic medical evidence. Furthermore, to the extent that the ALJ may have considered the absence of contemporaneous evidence in evaluating Claimant's credibility as to his allegedly disabling pain, this was not improper. In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain. *See Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir.1986); *see also Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 797 (6th Cir.1986). In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness. *See, e.g., Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989) (failure to seek medical care "should not be a determinative factor in a credibility assessment" where claimant is operating under a mental impairment). However, in this case, there is no evidence suggesting that Claimant's mental condition somehow hindered him from seeking examination or treatment. Further, Claimant has not asserted that he could not at least afford an examination during the relevant period, regardless of his ability to afford continuing treatment. Finally, the ALJ's opinion does not suggest that he regarded Claimant's failure to seek medical examination or treatment as "a determinative factor" in his credibility assessment.

■ Claimant also asserts that the ALJ relied on flawed vocational testimony with regard to the availability of jobs for someone with Claimant's physical limitations and who is functionally illiterate. Given Claimant's limitations as actually found by the ALJ, the vocational expert stated that Claimant would be able to perform a job as a dishwasher, for which there were 8,000 jobs statewide, or as a janitor, for which there were 22,000 jobs statewide. Though Claimant asserts that his functional illiteracy disqualifies him from these jobs under the Dictionary of Occupational Titles ("DOT") published by the Department of

Labor, the DOT is not the only source of admissible information regarding jobs. *See* 20 C.F.R. § 404.1566(d)-(e). An ALJ may rely on vocational expert testimony notwithstanding contrary conclusions in the DOT if the expert is found to be credible, *Barker v. Shalala,* 40 F.3d 789, 795 (6th Cir.1994), and the question posed to the expert accurately reflects the claimant's physical and mental limitations. *See Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987). The hypothetical posed to the expert met these requirements. Therefore, the ALJ did not err in crediting the vocational expert's testimony.

■ Finally, the ALJ did not misapply the law in finding that Claimant was not disabled under the Grid Rules. Though Claimant maintains that Grid Rules 201.01, *et seq.,* should have been applied and would have resulted in a finding that Claimant was disabled because his skills were not transferable, these rules only apply where a claimant of advanced age is found to be capable only of sedentary or light work. *See* 20 C.F.R. § 404.1568(d)(4). In fact, however, the ALJ found Claimant capable of medium work and correctly applied Grid Rules 203.00, *et seq.,* in finding Claimant not to be disabled.

## IV.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the District Court's decision denying summary judgment to Claimant and granting summary judgment to the Commissioner.