NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0147n.06

Case No. 16-3896

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 07, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SCOTT DAVID STAYMATE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: DAUGHTREY, SUTTON, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Scott David Staymate appeals the denial

of his application for supplemental social security income. In his appeal, Staymate raises four

major arguments: (1) the ALJ erred in failing to follow the "treating physician rule" by rejecting

a dispositive conclusion from the consulting expert; (2) the ALJ failed to fully develop the record

and resolve specific conflicts; (3) the ALJ erred by imposing an insufficient burden on the

Commissioner; and (4) the ALJ ignored regulatory factors and picked and chose from the record.

We find that Staymate's arguments fail, and we **AFFIRM** the district court's decision.

I.

**A.     Factual Background**

Staymate, born November 14, 1972, is a high school graduate with approximately one year of college education.  (R. 18-2, PageID # 97–99.)  He last worked in 2005, after which he filed for social security benefits because he had problems being around people.  (R. 28, PageID # 767.)  Staymate testified that he had bipolar disorder and a distorted sleep cycle, where he would not sleep for many days, and then sleep for two days straight.  (*Id.*)  He also testified that he suffered from explosive anger disorder, which was unpredictable, and had difficulties with concentration and focus.  (*Id.*)  According to Staymate, he was seeing a psychiatrist every three months, and seeing a counsellor every other week.  (*Id.* at PageID # 768.)

In early 2010, Dr. Andronic, Staymate's psychiatrist, reported an improvement in Staymate's moods and concluded that although he still had some anger issues, his medications were controlling his mood swings and depression.  (R. 18-7, PageID # 566–67.)  On June 30, 2010, Staymate reported to Dr. Andronic that he was doing well, did not have any significant complaints, and had no ups and downs.  (*Id.* at PageID # 572.)  He did, however, report that he had instances where he stayed awake for up to thirty-six hours, and slept for fourteen hours.  (*Id.*)  Dr. Andronic's reports from 2011, 2013, and 2014 (Staymate received no mental health treatment in 2012) are relatively similar.

Staymate also met with David R. Bousquet, M.Ed., a psychologist, in September 2013 at the request of the Ohio Division of Disability Determination.  (R. 18-7, PageID # 631.)  Mr. Bousquet rendered his opinion based on information self-reported by Staymate, as well as some of Staymate's medical records from 2010 and 2011.  (*Id.* at PageID # 631–32.)  Staymate reported that he had a family history of psychological difficulties with his biological father, who

had been diagnosed with bipolar disorder and paranoid schizophrenia. (*Id*. at PageID # 632.) Otherwise, Staymate generally reported that he was experiencing emotional and psychological problems, (*id*. at PageID # 634); that he did not eat a lot, (*id*.); and that he could go two to three days without sleeping since he had difficulty falling asleep because of racing thoughts. (*Id*.) Staymate denied having suicidal ideations and reported that he had homicidal thoughts, but had no intent to act on them. (*Id*.) With respect to his daily activities, Staymate reported that the browsed the internet, visited friends, and watched television shows, except that he avoided the news. (*Id*.) He also reported that he did household chores like mowing the grass, taking out trash, cleaning his room, doing his laundry, and cooking for himself. (*Id*. at PageID # 634–35.)

Mr. Bousquet observed that Staymate's affect was appropriate and that while his mood was depressed at times and anxious at other times, he did not show any signs of anger or irritability. (*Id*. at PageID # 635.) Mr. Bousquet concluded that Staymate's cognitive abilities fell in the average range, and that his reasoning and judgment capabilities fell at age appropriate levels. (*Id*. at PageID # 635–36.) Ultimately, Mr. Bousquet diagnosed Staymate with Bipolar Disorder, and assigned him a Global Assessment of Functioning ("GAF") score of 50 (symptom and overall) and 60 (functional). (*Id*. at PageID # 636.) Mr. Bousquet also concluded that Staymate would be expected to have difficulties with his abilities to respond appropriately to work place stresses and pressures, (*id*. at PageID # 638), and this was a marked impairment for Staymate. (*Id*. at PageID # 639–41.)

Staymate's records were also reviewed by two other state agency reviewers, Doctors Caroline Lewin and Roseann Umana. Dr. Lewin completed a residual functional capacity ("RFC") evaluation form on March 25, 2010, and concluded that Staymate had mild restrictions in daily living activities; moderate difficulties in social functioning; and mild restrictions

maintaining concentration, persistence, or pace. (*Id*. at PageID # 523.) Dr. Lewin opined that Staymate would be unable to perform work with anything more than minimal contact with the general public, and could only withstand occasional contact with coworkers. (*Id*. at PageID # 521.) Dr. Umana affirmed these findings in September 2010. (*Id*. at PageID # 581–99.)

### B. Procedural History

Staymate filed a claim seeking supplemental security income benefits with the Social Security Administration ("SSA") on January 13, 2010, and claiming that he became disabled on July 1, 2005.[1] (Appellant Br., at 2.) The SSA initially denied his application for benefits, and Staymate received a hearing from an Administrative Law Judge ("ALJ") on April 26, 2012. (Appellee Br., at 3.) The ALJ entered a decision on June 15, 2012, denying Staymate's application for benefits. (*Id*.) This decision, however, was overturned on appeal by the Appeal Council, and the case was remanded for further administrative proceedings. (*Id*.; Appellant Br., at 2.)

Staymate received a second hearing before a different ALJ on January 30, 2014. On March 6, 2014, the ALJ issued a decision denying Staymate's request for benefits, after finding that Staymate was not under a disability because his age, education, work experience, and RFC indicated that he was capable of successfully adjusting to other work in the national economy. (R. 18-2, PageID # 82.) On May 27, 2015, the Appeals Counsel denied review, and the ALJ's decision became the final decision of the Commissioner. (R. 28, PageID # 766.)

On June 23, 2015, Staymate filed his complaint in the district court challenging the decision of the ALJ. (R. 1.) The magistrate judge entered a Report and Recommendation on April 5, 2016, recommending that the court enter judgment in favor of the Commissioner. (R.

---

[1] Staymate filed his first application for disability insurance benefits and supplemental security income in June 2005 and a second application for supplemental security income in March 2007. Both applications were denied.

28, PageID # 778.)  The district court adopted the Report and Recommendation in full.  (R. 31.)

Staymate timely appealed.

## II.

We review a district court's decision in cases involving social security benefits de novo. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 702, 722 (6th Cir. 2014)).  This review, however, is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)).

"The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted).  Upon a finding that there is substantial evidence to support the ALJ's findings, we must affirm, and may not "even inquire whether the record could support a decision the other way."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (quoting *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).  In addition, this limitation precludes the Court from resolving conflicts in evidence or deciding questions of credibility.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted).  The substantial evidence standard, however, will not preclude us from reversing a decision where the Commissioner "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

III.

A.

Staymate first challenges the weight given Mr. Bousquet's opinion as a Consulting Examiner. According to Staymate, the ALJ's decision to give less weight to the one marked limitation identified by Mr. Bousquet violated the "treating physician rule." Staymate further argues prejudice in the form that the purported error obstructs meaningful review of the ALJ's decision. (Appellant Br., at 14.)

The treating source rule is one of the standards that the Commissioner imposes on the consideration of medical source evidence. 20 C.F.R. § 404.1502. This standard requires the ALJ to give a treating source opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.FR. § 404.1527(c)(2)). "If an ALJ decides to give a treating source's opinion less than controlling weight, [he] must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Wilson*, 378 F.3d at 544).

Initially, the district court found that Mr. Bousquet was not a treating source whose opinion was entitled to controlling weight. (R. 31, PageID # 818.) We agree. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997,

1001 (6th Cir. 2011) (quoting *Barker*, 40 F.3d at 794). The regulations make clear that a relationship based "solely on [a claimant's] need to obtain a report in support of [a] claim for disability" does not constitute a "treating source." 20 C.F.R. § 416.902. As the ALJ noted, Staymate met with Mr. Bousquet once in September 2013, and "reported that he was seeking disability benefits due to bipolar disorder." (R. 18-2, PageID # 79.) This single meeting does not suffice to create the on-going treatment relationship necessary to apply the treating source rule. *See Helm*, 405 F. App'x at 1000 n.3 ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source." (citations omitted)).

Having determined that Mr. Bousquet's opinion was not entitled to "controlling weight," we must still determine whether the ALJ properly considered it. First, as between an examining source and a non-examining source, the examining source will be given more weight. 20 C.F.R. § 404.1527(c)(1). In addition to this examining relationship, the ALJ may consider "specialization, consistency, [] supportability, . . . [and] [o]ther factors 'which tend to support or contradict the opinion.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *see also* 20 C.F.R. § 404.1527(c)(2)–(6). Here, the ALJ specifically gave an explanation for his treatment of Mr. Bousquet's opinion: "[L]ess weight is given to the consultative examiner's opinion of a marked limitation in responding to work situations and changes, as this opinion is based on the claimant's subjecti[ve] reporting of his symptoms and not supported by other objective evidence. In addition, it appears inconsistent with the GAF score of 60 in functioning, which supports only mild limitation in functioning." (R. 18-2, PageID # 80.) We have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion. *See*

*Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013). Here, also, we find that the ALJ adequately explained his decision to give little weight to a portion of Mr. Bousquet's opinion. In reaching his decision, the ALJ properly relied on reports of Staymate's daily living and on the notes from Dr. Andronic's treatment sessions. This decision is supported by substantial evidence in the record.

B.

Staymate next argues that the ALJ failed to resolve certain conflicts and to fully develop the record. First, he argues that the ALJ failed to resolve the conflict between the testimony of the vocational expert and the Dictionary of Occupational Title ("DOT"). The vocational expert testified that Staymate's age, education, work experience, and RFC allowed him to work as a solderer, packing line worker, and bottling line attendant. The ALJ adopted this finding. (R. 18-2, PageID # 82.) Before the district court, Staymate argued that solderer jobs are outside the scope of his limitations because they would regularly expose him to hazards, including the soldering iron and gas flame. (R. 19, PageID # 707.) He also argued that the job of packing line worker would require him to have more than occasional contact with other employees, which is also outside the scope of his limitations. (*Id.*)

Under Social Security Ruling 00-4p, an ALJ has an affirmative duty to inquire as to whether a vocational expert's evidence conflicts with the information provided in the DOT, and to resolve any "apparent conflicts." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). We have found it sufficient to satisfy this duty where the ALJ asks the vocational expert if there is a conflict. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Here, the ALJ specifically asked: "[I]s your testimony that you've given consistent with the [DOT]?" (R. 18-2, PageID # 132.) The vocational expert answered that it was. (*Id.*) Even more, Staymate's

counsel did not make any objections. (*Id.*) Absent an objection to the vocational expert's testimony, the ALJ reasonably relied on the testimony. *See Martin*, 170 F. App'x at 374 ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). Regardless, as the district court found, Staymate does not argue that there is a conflict with the bottling line attendant position. The ALJ could have reasonably found that Staymate could perform this position, had he discounted the first two.

Staymate also appears to argue that the ALJ failed to develop the record with respect to his "attempts at hospitalization" and the reasons for his discharge from the military. (Appellant Br., at 16.) Particularly, Staymate contends that the ALJ interrupted his answer to the questions concerning incarcerations or convictions. (Appellant Reply Br., at 15.) The exchange Staymate refers to here went thus:

> Q: Okay. Have you been incarcerated or have you committed any assaults or batteries, or shot anybody because of your anger?
>
> A: The last time I was incarcerated for my anger was probably -- I'm trying to think -- early to mid-'90s, where I got a persistent disorderly --
>
> Q: Okay. Well, that's too far back. I don't need that. . . .

(R. 18-2, PageID # 110.) According to Staymate, the ALJ, in order to properly discharge his duty, should have allowed him to finish and then asked if there were more recent incarcerations, instead of cutting him off. (Appellant Reply Br., at 15–16.)

We find Staymate's argument unpersuasive. True, common courtesy frowns on interrupting a speaker mid-sentence, but it does not override an ALJ's discretion in determining what evidence is necessary. More importantly, Staymate retains the burden of proving that he is disabled and entitled to benefits. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir.

2010) (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). Staymate argues that the ALJ has a heightened duty to develop the record where the claimant has a mental impairment. (Appellant Br., at 17.) However, Staymate was represented by counsel in the proceedings before the ALJ. In light of this, we find difficulty in imposing a "heightened" duty on the ALJ.

C.

In his third claim, Staymate argues that the ALJ improperly applied the burden of proof at step five of the required five-step sequential analysis for a disability benefits claim.

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is entitled to social security benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medical impairment; (3) whether the severe impairment meets or equals the severity and durational requirements of the Social Security Regulations; (4) whether the claimant has the RFC to do any relevant past work; and (5) whether the claimant can perform any other work. *See* 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson*, 378 F.3d at 548 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). "At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Id.*

Here, the ALJ first noted that he was required under the Social Security Act to apply the five-step analysis and then outlined all the applicable steps. At the fifth step, the ALJ noted: "Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration."

(R. 18-2, PageID # 73.) It is this language that Staymate takes issue with and argues is evidence that the ALJ did not properly shift the burden as required in this step. We disagree.

The ALJ further noted that "[i]n order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience." (*Id*.) This does not *minimize* the burden shift in this step as Staymate claims; rather, the ALJ properly described the Commissioner's at this phase. (*See id*. (citing 20 C.F.R. § 416.960(c) ("[W]e are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.")).) More importantly, the ALJ reasonably assessed whether the Commissioner had met this burden. During the hearing, the ALJ elicited information from the vocational expert concerning what work Staymate could perform, considering his RFC, age, education, and work experience. (R. 18-2, PageID # 127–32.) Based on the vocational expert's response, the ALJ found that the Commissioner had carried its burden in this fifth step. The ALJ's reliance on this testimony was not in error. "This court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation can perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work." *Wilson*, 378 F.3d at 549 (citations omitted).

The ALJ's use—perhaps inadvertently—of *limited* to describe the Commissioner's burden in the fifth step did not diminish that burden as Staymate claims, and substantial evidence

exists in the record to support the ALJ's finding that the Commissioner met its burden in this step.

D.

Staymate's final claim alleges that the ALJ "picked and chose" from the evidence in record. (Appellant Br., at 22.) In particular, Staymate argues that the ALJ ignored evidence from Dr. Andronic, his psychiatrist, which further supported Mr. Bousquet's findings. According to Staymate, at least on one occasion in December 2010, Dr. Andronic *observed* that Staymate was unkempt, disheveled, and displayed agitated activity with rapid and pressured speech. (Appellant Br., at 23; R. 18-7, PageID # 613.) This objective evidence, Staymate argues, was ignored by the ALJ in deciding to discredit Staymate's self-reporting. Staymate also appears to take issue with the ALJ's decision to accord less weight to the testimony from his mother, Janice Frye.

In general, an ALJ's failure to follow agency rules and regulations, one of which is evaluating all opinions of record, may "denote[] a lack of substantial evidence." *Cole*, 661 F.3d at 937. However, we have held that "[a]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). The record indicates that the ALJ considered Dr. Andronic's opinion and nonetheless concluded that Staymate had "medically determinable impairments that could reasonably be expected to cause some of the symptoms described, but not to the frequency or debilitating degree of severity alleged." (R. 18-2, PageID # 77.) Further, the ALJ noted its reliance on the fact that "no treating source has opined that [Staymate] has permanent limitations that prevent him from working." (R. 18, PageID # 80.)

The ALJ's reliance on its evaluation of the medical opinions in the record, as well as its decision to give Staymate's mother's testimony less weight than the opinions of state agency medical consultations, (*see* R. 18-2, PageID # 80), was not improper. Additionally, this decision was supported by substantial evidence.

IV.

For the aforementioned reasons, we **AFFIRM** the district court's judgment.