NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0172n.06

Case No. 16-6298

FILED
Mar 21, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JANET BOWMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BOGGS, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Janet Bowman appeals a district court's order affirming a decision of the Commissioner of Social Security (Commissioner) to deny her disability insurance and supplemental-social-security income. Substantial evidence supports the Commissioner's decision, and we therefore AFFIRM the district court's judgment.

**I.**

**A. Factual Background**

Bowman applied for disability benefits and social-security income in August 2010. She alleged that she became disabled on April 3, 2006, citing mental and emotional problems. Before her alleged disability onset date, Bowman had worked as an assembly-line worker, cashier, and florist-delivery person. But in 2006, Bowman began experiencing symptoms of

depression and anxiety that she claimed inhibited her ability to work. As a result, she sought treatment at Pathways of Tennessee (Pathways), a behavioral health-services center.

On her first visit to Pathways in August 2006, Bowman explained to an intake clinician that she had been married and divorced twice. Both ex-husbands had abused her. She reported a suicide attempt in 2004, but exhibited no current signs of suicidal ideation. The clinician diagnosed her with severe depression and post-traumatic stress disorder (PTSD) stemming from her abusive relationships. But, according to the clinician, Bowman exhibited appropriate behavior and sociability, fair concentration, and good insight. She also possessed independence in daily living activities. On a follow-up visit a few weeks later, Bowman reported "doing better generally."

The next few years of her treatment at Pathways yielded no remarkable developments. Between August 2007 and April 2009, Bowman at times exhibited a depressed and anxious affect, but continued showing cooperative behavior and appropriate thought content and speech. In May 2009, a Pathways clinician determined that her Global Assessment of Functioning (GAF) score[1] was 65, a score consistent with mild impairments in social and occupational functioning. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV-TR*"), 34 (4th ed. 2000).

Beginning in June 2010, Pathways therapist Dana Williams, M.S., began seeing Bowman for individual treatment sessions. Her progress notes between June 2010 and February 2012 detailed little change from other clinicians' reports of the previous few years. She observed that Bowman had "moderate" difficulties being around crowds and completing simple tasks and was

---

[1] A GAF score is a "subjective determination" on a scale of 1 to 100 "that represents 'the clinician's judgment of the individual's overall level of functioning.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 & 415 n.1 (6th Cir. 2006) (quoting *Wesley v. Comm'r of Soc. Sec.*, No. 99-1226, 2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000)).

easily agitated and experienced stress. But Williams also noted that Bowman was cooperative and responsive, displaying a pleasant affect and appropriate thought content and hygiene. In September 2010, Williams completed a Social Security Administration (SSA) function report on Bowman's behalf, detailing that Bowman lived alone, prepared her own meals, and did her own laundry. She could drive a car, shop, pay bills, and handle a savings account. In November 2011, Williams assessed Bowman's GAF score at 60, indicating moderate impairments in social functioning. *DSM-IV-TR*, 34.

Six months later, however, Williams's assessment of Bowman changed significantly. In an April 2012 response to an SSA questionnaire, Williams noted that Bowman had almost no ability to deal with work stress, function independently, maintain concentration, maintain her personal appearance, and behave in an emotionally stable manner.

At the request of a state agency, two consultative examiners saw Bowman in 2010. In November, Dr. Edward L. Crosthwait, M.D., examined her, observing no physical ailments but diagnosing her with depression and paranoia. Dr. Richard Spring, Ph.D., also saw Bowman that month. He noted her reports of depression, anxiety, and sleeping difficulties and diagnosed her with depressive and anxiety disorders, but he found no clinical manifestations of psychosis. He also observed that she demonstrated linear thought processes, normal speech, and largely intact intellect, judgment, and insight. Although he observed that Bowman had "some" difficulty with complex and varied instructions, Dr. Spring concluded that she had only "mild" cognitive impairment and could understand, remember, and carry out simple instructions. He also determined that she could "maintain socially appropriate behavior," "respond adaptively to change," and "function with reasonable independence in terms of work related decisions."

Nevertheless, he assigned her a GAF score of 50, indicating serious functional difficulties. *DSM-IV-TR*, 34.

In February and May 2011, two state agency psychological consultants reviewed Bowman's treatment history and opined on Bowman's functional capacity. Psychological consultant Dr. Amin Azimi, Ed.D., concluded that Bowman could perform 1- to 3-step tasks, concentrate and persist for an 8-hour workday, and set independent goals. He also noted, however, that she lacked the capacity to adapt to frequent changes or to interact with other people on a frequent basis. Dr. Jenaan Khaleeli, Psy.D., concurred with Dr. Azimi's findings.

## B. Procedural Background

After the SSA denied her request for disability-insurance benefits and social-security income, Bowman requested a hearing before an Administrative Law Judge (ALJ) in May 2012. At the hearing, Bowman testified that she applied for disability because she avoided public places and had PTSD due to one of her previous marriages. She also testified that since her alleged onset date in 2006, she sat in her home and watched television with blankets over the windows, secluding herself from others.

After considering the evidence, the ALJ concluded that Bowman "has not been under a disability within the meaning of the Social Security Act from April 3, 2006, through the date of this decision." Specifically, the ALJ held that Bowman "does not have an impairment . . . that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." It also found that Bowman was not disabled because she was "capable of performing [her] past relevant work as a florist delivery person" or doing other occupations.

The ALJ's determination became the Commissioner's final decision when the Appeals Council denied Bowman's request for review. Bowman then sought review by the district court, which affirmed the Commissioner's decision.

Bowman timely appealed. She argues that the ALJ erred in (1) concluding that she failed to meet the impairment-listing criteria for certain mental disorders, and (2) finding that she had the residual functional capacity to perform past relevant work or other work in the national economy.

## II.

We review the district court's decision de novo, but must affirm the ALJ's denial of benefits if the ALJ applied the correct legal standard and its decision is supported by substantial evidence. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992)). And "[i]f substantial evidence supports the Commissioner's decision, [we] defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

## III.

Bowman qualifies for disability benefits and supplemental social security income under the Social Security Act if she is disabled. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). Relevant here, the Act defines a disabled person as someone who is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment" expected to last at least 12 months. *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).

ALJs follow a five-step sequence to determine if someone is disabled. The first two steps ask whether the claimant is either currently employed or lacks a severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(ii), 416.920(a)(4)(i)–(ii). If the answer to either question is yes, the ALJ must deny benefits without further inquiry. *Id.* §§ 404.1520(a)(4)(i)–(ii), 416.920(a)(4)(i)–(ii). At step three, the ALJ determines whether the claimant automatically qualifies for benefits because his impairments match the criteria for a listed disability. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ must determine the claimant's "residual functional capacity" (RFC) before proceeding to the next two steps. *Id.* §§ 404.1520(a)(4), 416.920(e). The RFC reflects what a claimant can do despite his limitations. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), 416.945(a)(1). At steps four and five, the ALJ considers whether, given the claimant's RFC, he can perform either his past work or another job that exists in significant numbers in the national economy. *See id.* §§ 404.1520(a)(4)(iv)–(v), 416.920(a)(4)(iv)–(v). If the claimant can perform such work, he is not disabled.

The ALJ conducted this five-step analysis and determined that Bowman was not disabled. Bowman challenges its conclusions and findings at steps three, four, and five.

**A.**

After considering the Pathways treatment records, medical opinion evidence, and Bowman's testimony, the ALJ found that Bowman suffered from major depressive disorder, PTSD, and anxiety disorder. But the ALJ also concluded at step 3 that her impairments' severity did not meet the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, because Bowman experienced only moderate restrictions in daily living, social functioning, and

maintaining concentration, persistence, and pace, and she had no extended episodes of decompensation—that is, periods of exacerbated symptoms. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2012), § 12.00A.[2]

In contesting the ALJ's step-3 determination, Bowman claims that the ALJ should have found that her impairments met the criteria for the following mental disability listings: 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04, 12.06. We disagree.

The disability-qualifying impairment listings at step 3 "are descriptions of various physical and mental illnesses and abnormalities . . . defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). As noted, a conclusion that the claimant satisfies the listed criteria automatically entitles him to benefits without further inquiry. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant alleges his impairments meet or equal a listed impairment, he must present specific medical findings to satisfy the criteria of the particular listing. *See id.* §§ 404.1520(a)(4)(iii), 404.1526; *Sullivan*, 493 U.S. at 530. Each of the three listings at issue here—12.03, 12.04, and 12.06—are "mental disorders" whose criteria follow the same general framework: (i) "paragraph A" criteria, impairment-related symptoms, (ii) "paragraph B" criteria, impairment-related limitations, and (iii) "paragraph C" criteria, additional functional criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00A, 12.03, 12.04, 12.06. A claimant can meet one of these three mental disorder listings

---

[2] The SSA modified the listing criteria for mental disorders in January 2017. All subsequent citations to 20 C.F.R. Pt. 404, Subpt. P, App. 1 refer to the version of the regulation in effect at the time of Bowman's SSA-benefits application and the ALJ's decision.

only if he satisfies either: (1) the criteria of both paragraphs A and B; or (2) the criteria of paragraph C. *Id.*

Applying this framework, substantial evidence supports the ALJ's conclusions at step 3.

(1) <u>The Paragraph A and B Criteria of Listings 12.03, 12.04, and 12.06</u>

We first address whether substantial evidence supports the ALJ's conclusion that Bowman fails to satisfy paragraphs A and B of listings 12.03, 12.04, and 12.06. As a preliminary matter, Bowman offers no argument that she suffers from the paragraph A symptoms for each of the three listings, nor did the ALJ address this issue. But even assuming she can meet paragraph A for each listing, she lacks the requisite impairment-related limitations in each listing's paragraph B.

Listings 12.03, 12.04, and 12.06 share the same paragraph B criteria. The claimant must show his disorder results in at least two of the following limitations: (1) marked restrictions in the activities of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03B, 12.04B, 12.06B. "Marked" means more than moderate but less than extreme. *See id.* § 12.00C.

Bowman argues that she can demonstrate marked limitations in the areas of social functioning and maintaining concentration. But as the ALJ observed, her limitations in these two areas were moderate at worst. For instance, Pathways records between 2006 and 2012 report that she was consistently cooperative and usually exhibited a pleasant affect in her interactions with clinicians. And although Bowman tended to seclude herself, examining psychologist Dr. Spring noted that she could maintain socially appropriate behavior and work with others to avoid conflict.

Moreover, despite evidence in the record that Bowman possessed only a limited ability to follow complex instructions, Pathways examination notes reported that she could maintain concentration with only moderate difficulty and that she possessed average intellect and appropriate thought processes and memory. The assessments of psychological examiners Dr. Spring and Dr. Azimi corroborated these reports: Dr. Spring found that Bowman was able to understand, remember, and carry out instructions, having only "some" difficulty with complex and varied instructions; Dr. Azimi opined that Bowman could perform 1- to 3-step tasks and persist for an 8-hour workday.

(2) The Paragraph C Criteria of Listings 12.03, 12.04, and 12.06

We next consider whether substantial evidence supports the ALJ's determination that Bowman failed to satisfy paragraph C in listings 12.03, 12.04, and 12.06.

A claimant can satisfy paragraph C of both listings 12.03 and 12.04 if he shows "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03C, 12.04C. An episode of decompensation occurs when there has been an "exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation." *Id.* § 12.00C. Bowman contends that she satisfies this criterion by pointing to a suicide attempt at the time of her second divorce in 2004, and her "need to have a family member live with and help her." But this incident occurred well before her alleged disability onset date in April 2006, and there is no evidence in the record that Bowman experienced suicidal ideation—or other periods of exacerbated symptoms—after that point.

A claimant can satisfy paragraph C of listing 12.06 if he shows the "complete inability to function independently outside the area of [his] home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06C. Bowman suggests she can satisfy this criterion by pointing to her testimony that she

stays at home alone with blankets covering the windows. Yet her claims of total seclusion from society are difficult to credit, given the substantial evidence that she could, in fact, function independently outside of her home during the alleged disability period. In 2011, for instance, she reported taking her parents to cancer-treatment sessions and starting a relationship with a new boyfriend.

In sum, substantial evidence supports the ALJ's conclusion that Bowman fails to meet the criteria for impairment listings 12.03, 12.04, and 12.06.

**B.**

After determining that Bowman's mental disorders did not meet the severity of an impairment listing, the ALJ found that Bowman had the residual functional capacity (RFC) to perform work at all exertional levels, but with the following non-exertional limitations: she could only (i) understand, remember, and carry out 1- to 3-step directions; (ii) maintain concentration and persistence for 1- to 3-step tasks; (iii) adapt to infrequent workplace changes, and (iv) work in an environment involving infrequent contact with coworkers. The ALJ also found that Bowman was better at working with things than people. Proceeding to steps 4 and 5, the ALJ posed a hypothetical to a vocational expert (VE) that was consistent with its RFC finding, querying whether Bowman could perform her past relevant work or other jobs available in the economy. The VE testified that Bowman could perform her past relevant work as a florist-delivery person, or, alternatively, she could work as an inspector or packer. Relying on this testimony, the ALJ concluded Bowman was not disabled.

To contest the ALJ's RFC finding and its analyses at steps 4 and 5, Bowman claims the ALJ erred in evaluating the medical opinion evidence and her own testimony. We address her arguments in turn.

(1) <u>The ALJ's Evaluation of the Medical Opinion Evidence</u>

To determine whether a claimant is disabled, the Commissioner evaluates all medical opinions, i.e., statements from physicians or other "acceptable medical sources" that reflect judgments about the nature and severity of a claimant's impairments. *See* 20 C.F.R. § 404.1527(a)(2), (b), (c). The weight accorded to an acceptable medical source's opinion depends upon factors such as the examining and treating relationship, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See id.* § 404.1527(c).

In evaluating Bowman's disability claim, the ALJ accorded little weight to therapist Dana Williams's opinion, some weight to Dr. Spring's opinion, no weight to Dr. Crosthwait's opinion, and significant weight to Dr. Azimi's and Dr. Khaleeli's opinions.

Bowman makes a series of arguments to challenge the ALJ's weighing of this evidence. All fail to persuade us.

*First*, Bowman contests the ALJ's decision to give little weight to therapist Williams's opinion. In particular, she argues that, because Williams was a treating source, the ALJ should have given special deference to the therapist's April 2012 opinion that she had poor to no ability to function independently, deal with work stresses, and behave in an emotionally stable manner. But Williams, as a therapist, is not an "acceptable medical source" under the regulations; rather, she is an "other source." *See* 20 C.F.R. §§ 404.1502, 404.1513(a). Only the opinions of "acceptable medical sources" can be considered treating sources whose opinions may be entitled to controlling weight. *Id.* § 404.1527(a)(2), (c); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014).

Bowman nevertheless protests that, even if Williams's opinion was not automatically entitled to special deference, the ALJ failed to evaluate it properly under Social Security Ruling

(SSR) 06-03p, which sets forth the factors ALJs should consider when evaluating opinions from "other sources." 2006 WL 2329939. These factors include the treatment relationship between the individual and the treating source and the medical opinion's consistency with the record as a whole. *Id.* at *4–5. Notwithstanding Bowman's contentions, the ALJ properly evaluated Williams's April 2012 opinion under SSR 06-03p. As the ALJ noted, Williams's opinion was inconsistent with Bowman's treatment history and the record as a whole. *See id.* In particular, Pathways reports—including Williams's own treatment notes—belie her April 2012 opinion. Records during the alleged disability period describe Bowman as someone with appropriate hygiene, cooperative behavior, fair attention and concentration, good insight, average intellect, and appropriate sociability.

*Second*, Bowman contends that the ALJ improperly evaluated Dr. Spring's opinion by according it some weight but discounting his conclusion that she had a GAF score of 50, which reflects severe symptoms. Bowman argues that the ALJ should have given greater weight to that score. We disagree. Although Dr. Spring assigned Bowman a GAF score consistent with serious symptoms, *see DSM-IV-TR*, 34, his narrative concluded that she had only "mild" cognitive impairment, "mild" work-tolerance impairment, "mild" difficulty in motivation, and "moderate" difficulty being around others. The ALJ appropriately discredited Dr. Spring's GAF score because it was inconsistent with his own examination report and the record as a whole.

*Third*, Bowman faults the ALJ for giving no weight to Dr. Crosthwait's diagnoses of depression and paranoia. But, Dr. Crosthwait's opinion finds little support in his own treatment notes: although the physician concluded Bowman suffered from two mental disorders, he did so without performing a single psychological or mental-status evaluation.

*Fourth*, Bowman asserts that the ALJ should not have given significant weight to the opinions of state psychological consultants Dr. Azimi and Dr. Khaleeli because they did not treat her. And she portrays their opinions as little more than biased "checklist" forms. But we decline to entertain Bowman's suggestion that Dr. Azimi's and Dr. Khaleeli's consultant statuses diminish their opinions' persuasiveness. State agency and psychological consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *See* 20 C.F.R. § 404.1527(e)(2)(i).

As for her contention that the ALJ cannot accord greater weight to their opinions than to those of her treating sources, Bowman misrepresents the applicable law. "In appropriate circumstances, opinions [from non-examining sources] may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-p, 1996 WL 374180, at *3; *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 568 (6th Cir. 2009). Substantial evidence supports finding such circumstances present here. Dr. Azimi reviewed a significant portion of the record and concluded that Bowman was capable of performing 1- to 3-step tasks, concentrating for an 8-hour workday, and setting independent goals, even if she could interact only infrequently with others. Dr. Khaleeli affirmed this opinion. As the ALJ explained, these practitioners' opinions were consistent with the record as a whole, including Pathways notes and Dr. Spring's narrative opinion.

*Fifth*, Bowman argues that there is no single treating, examining, or reviewing source opinion consistent with the ALJ's RFC finding. But the ALJ's RFC finding is, in fact, consistent with Dr. Azimi's opinion, Dr. Khaleeli's opinion, Dr. Spring's narrative opinion, and the Pathways records as discussed.

(2) The ALJ's Evaluation of Bowman's Testimony

Bowman also says the ALJ improperly dismissed her complaints about her impairments' severity as not credible. We disagree.

A claimant's statements about her symptoms are insufficient to establish disability; rather, the record must include medical signs and findings showing the existence of a medical impairment that would lead to a conclusion that the claimant is disabled. 42 U.S.C. § 423(d)(5)(A). Further, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," so long as there is substantial evidence to support them. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted).

Here, Bowman represented her mental impairments as severe, causing her to remain isolated in her house with blankets draped over the windows. But the ALJ found Bowman's statements "concerning the intensity, persistence and limiting effects of [her impairment-related] symptoms . . . not credible to the extent . . . alleged." As the ALJ recognized, Pathways treatment records reported GAF scores of 55 to 65 throughout the alleged disability period, reflective of mild to moderate symptoms in social and occupational functioning. These records also revealed that Bowman had only moderate limitations in daily living activities, concentration, and interpersonal functioning.

In addition to this evidence, Bowman's own descriptions of her daily living activities contradict her reports of severe mental disability. In August 2006, she reported participating in water sports and outdoor activities. A September 2010 function report showed she prepared her own meals, performed laundry when needed, handled a savings account, and paid bills, among other daily activities. In short, substantial evidence supports the ALJ's credibility finding.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.