NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0221n.06

No. 17-4070

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 30, 2018
DEBORAH S. HUNT, Clerk

DANIEL J. ANDRES,                                )
                                                 )
    Petitioner-Appellant,                        )
                                                 )
v.                                               )
                                                 )
COMMISSIONER OF SOCIAL SECURITY,                 )
                                                 )
    Defendant-Appellee.                          )
                                                 )
                                                 )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

BEFORE:    SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Plaintiff-Appellant Daniel J. Andres has a history of neck and low-back pain and has had two cervical spine fusion surgeries. He applied for disability insurance benefits and supplemental security income in February 2013, claiming an onset date of January 2012. His past work included forklift driver, hi-lo operator, and job setter. R. 11, ID# 127.[1] Applying 20 C.F.R. § 404.1529(a)'s five-step analysis, the administrative law judge ("ALJ") concluded that, despite his medically severe impairments, which included lumbar degenerative disc disease, cervical degenerative disc disease with status-post decompression and fusion procedures, degenerative joint disease of the left shoulder, obesity, major depressive disorder, and social phobia, Andres retained the residual functional capacity ("RFC") to perform light sedentary work with additional limitations. The ALJ also concluded that jobs with those restrictions existed in significant numbers in the national economy. The appeals council denied

---

[1] Record entry 11 is the transcript of the entire record of proceedings before the Social Security Administration. *See* R. 11, ID#54. The ALJ's decision is located at ID# 68-86.

Andres' request for review of the ALJ's decision, making it the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The magistrate judge and district court affirmed that decision.

Andres appeals, contending that the ALJ ignored the fact that he cannot sit for long periods and therefore cannot perform repetitive jobs such as inspector, assembler, or polisher/smoother. The Commissioner claims that Andres forfeited his right to appeal the district court's judgment because he failed to file specific objections to the magistrate judge's report and recommendation and that substantial evidence supports the ALJ's determination in any event.

*Forfeiture.* The magistrate judge's report and recommendation informed Andres that he had fourteen days to file objections or he would waive them. R. 20, ID# 1401-02. The day after the magistrate judge issued his report and recommendation, the district court issued an order outlining the briefing requirements for filing objections. R. 21, ID# 1403. That order told the parties that they had fourteen days to file any objection "under Local Rule 72.3," which requires that "written objections . . . shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." N.D. Ohio Civ. R. 72.3(b); R. 21, ID# 1403. The district court's order also stated that "[e]ach Objection must (1) be separately enumerated, (2) specifically identify the portion of the R&R to which the party objects, and (3) clearly outline the basis for the Objection, with appropriate citations to the record and relevant legal authority." R. 21, ID# 1403. Further, the court set a ten-page limit, absent a showing of good cause. *Id.* Finally, the court warned that noncomplying submissions "shall be stricken." *Id.*

Although Andres' filing was timely, he failed to comply with any of the enumerated requirements (and he blew past the ten-page limit). Instead, as the district court noted, Andres

essentially re-filed his merits brief, R. 24, ID# 1433, with the addition of one paragraph. *Compare* R. 16, ID# 1309-33 (merits brief), *with* R. 22, ID# 1404-29 (objections to magistrate judge's report and recommendation). In that paragraph, which Andres characterizes as a "crystallization" of his objections to the magistrate judge's report, Reply Br. at 2-3, he does not identify, "with appropriate citations to the record and relevant legal authority," R. 21, ID# 1403, any specific errors by the magistrate judge.

If a party receives notice, yet fails to file timely and compliant objections, he forfeits appellate review of the district court's adoption of the magistrate judge's report. *See Spencer v. Bouchard*, 449 F.3d 721, 724 (6th Cir. 2006), *abrogated on other grounds by Jones v. Brock*, 549 U.S. 199 (2007). *See generally Thomas v. Arn*, 474 U.S. 140, 147-48 (1985) (holding that the waiver rule is a valid exercise of this court's supervisory power); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). And the objections must be specific. *Spencer*, 449 F.3d at 725 ("'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general.") (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Because Andres failed to pinpoint the magistrate judge's alleged errors, he has forfeited his arguments on appeal.

*Merits*. We nonetheless find that Andres has not shown that the ALJ failed to properly apply the correct legal standards or made findings of fact unsupported in the record. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)).

*Dr. Kanney's Opinion.* Andres argues that the ALJ should have given controlling weight to treating physician Dr. Robert Kanney's opinion that Andres is "totally unable to work." This assessment was not a medical opinion as described in the regulations, *see* 20 C.F.R.

§ 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . . ."),[2] but rather an "opinion[] on issues reserved to the Commissioner," namely an assessment of the ability to work. *See* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). *Cf.* 20 C.F.R. § 404.1527(c)(2) (directing that a treating physician's opinion should be given controlling weight when it relates to "the nature and severity" of a claimant's impairment and is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence").

The statement also must be read in context.  Dr. Kanney made it two weeks prior to Andres' revision neck surgery, and remarked that Andres was "[a]t this point . . . totally unable to work and I do not expect to be able to physically return to the heavy labor he had been doing." R. 11, ID# 629.  That statement in no way suggests that Andres was totally and permanently disabled from all labor.  In his discharge order after the revision surgery, neurosurgeon Azedine Medkhour cleared Andres to return to work, although he did not specify a date. R. 11, ID# 1145. Furthermore, the ALJ agreed that Andres could not return to his heavy labor work.  R. 11, ID# 78.  Specifically, the ALJ found that Andres was limited to a reduced range of sedentary work. R. 11, ID# 74.

Moreover, the ALJ's rejection of Dr. Kanney's "rather extreme preclusion on all work activity" was based on clinical and diagnostic findings in the record, which consistently showed normal neurological examination findings, including normal tone and sensation, as well as full strength in the upper and lower extremities. *See* R. 11, ID# 78 (citing ID# 445, 449, 597, 608,

---

[2] 20 C.F.R. § 404.1527 applies to opinion evidence for claims filed before March 27, 2017.

720, 895, 905-08, 914, 1243-44). In addition, post-revision cervical spine x-rays consistently showed satisfactory alignment with no hardware complications. R. 11, ID# 78 (citing ID# 430-33, 439, 714-15, 731, 791-97, 906, 914-19, 1244, 1249-50).

Occupational therapist Lynne Chapman, who performed a work performance test on Andres in March 2013, also lent support to the ALJ's conclusion. *See* R. 11, ID# 79. She concluded that Andres could perform light work with additional non-exertional restrictions, including only occasional working with arms overhead while standing, never working in a bent position while standing or sitting, and never engaging in repetitive trunk rotation while sitting. Chapman assessed that Andres could occasionally kneel, climb stairs and ladders, and engage in repetitive trunk rotation while sitting. R. 11, ID# 79 (citing ID# 920-22). The state agency reviewing physicians, Drs. Louis Goorey and Gerald Klyop, reached the same conclusions after taking into account Andres' neck pain, diminished spinal range of motion, and positive facet loading as well as postoperative findings of normal gait, normal bulk and tone, normal strength, and normal sensation. R. 11, ID# 144-46, 171-74. The ALJ did not err in discounting Dr. Kanney's opinion in light of the objective findings of Goorey and Kylop. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015) (ALJ may give greater weight to state agency physician's opinion if it is supported by record evidence).

Thus, as the magistrate judge (and district court by adoption) concluded, "the ALJ did not err in its treatment of Dr. Kanney's opinions," R. 24, ID# 1434, because (1) the ultimate disability question was the Commissioner's prerogative; (2) the ALJ's decision was partially consistent with Dr. Kanney's conclusion that Andres would not be able to return to his prior heavy labor work; (3) the ALJ gave "good reasons" for rejecting the rest of Dr. Kanney's opinion; and (4) the ALJ gave "great weight" to the unanimous views of occupational therapist

Lynne Chapman, and state agency reviewing physicians that Andres was capable of some level of work. R. 20, ID# 1389-91. In short, the ALJ was not bound by Dr. Kanney's opinion because it was not supported by sufficient medical data and the ALJ provided "a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

*Dr. Shamberg's Opinion*. Andres is also mistaken in suggesting that the ALJ was required to give controlling weight to the opinion of psychological consultative examiner Dr. Neil Shamberg. The regulations give controlling weight to a treating physician only (and only if certain criteria are met). *See* 20 C.F.R. § 404.1527(c)(2). Dr. Shamberg only examined Andres one time. *See Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017) (one-time meeting with a psychological consultative examiner does not "create the on-going treatment relationship necessary to apply the treating source rule" and the ALJ is entitled to give less weight to the consultative examiner's opinion). The ALJ also reasonably discounted Dr. Shamberg's assessments that Andres would have problems remembering and carrying out job instructions, and maintaining persistence and pace, because Dr. Shamberg noted that Andres showed no signs of anxiety, and his thought processes "were always logical, coherent, and goal directed." R. 11, ID# 583-84. As the ALJ further noted, Andres' treatment records of Drs. Medhkour and Kanney consistently documented "normal memory function, good concentration and clear articulation." R. 11, ID# 81 (citing ID# 444-60, 469-88, 495-503, 720-36, 894, 899-915, 1194-95, 1243).

The ALJ's rejection of Dr. Shamberg's low GAF assignment of 45[3] was not unreasonable, because the GAF score was inconsistent with Dr. Shamberg's observations of polite and cooperative demeanor with no signs of anxiety or anger. R. 11, ID# 82 (citing ID# 444-60, 469-88, 495-503, 720-36, 894, 899-915, 1194-95, 1243). *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 375 (6th Cir. 2017) (holding that ALJ properly discounted psychological consultative examiner's score because it was inconsistent with his own examination report and the record as a whole). Furthermore, the ALJ's RFC was consistent with Dr. Shamberg's assessments. Dr. Shamberg assessed problems remembering and carrying out job instructions; the ALJ similarly restricted Andres to understanding, remembering, and carrying out simple, routine, and repetitive tasks, R. 11, ID# 74 (citing ID# 586). Dr. Shamberg also assessed problems responding appropriately to supervisors and coworkers, R. 11, ID# 586; the ALJ precluded all interaction with the public and allowed only occasional interaction with coworkers and supervisors, R. 11, ID# 74. Dr. Shamberg concluded that Andres would have problems with maintaining concentration, persistence, and pace as well as responding to work pressures, R. 11, ID# 586; the ALJ found that Andres' productivity pace could not be dictated by an external source that Andres could not control. R. 11, ID# 74. In short, Andres has not shown how the limited weight the ALJ afforded Dr. Shamberg's assessment harmed him.

As the magistrate judge held, the ALJ appropriately (1) gave "some weight" to Dr. Shamberg's opinion by adopting his conclusions regarding Andres' ability to respond to coworkers and work pressures; (2) rejected Dr. Shamberg's opinion regarding Plaintiff's ability to follow job instructions and maintain pace; and (3) discounted the GAF score R. 20, ID# 1398-99.

---

[3] The Global Assessment of Functioning, or GAF, scale measures the impact of mental illness on an individual's daily life. A GAF of 41-50 indicates serious symptoms or impairments. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

*RFC Finding*.  The ALJ found that while Andres could not perform his past relevant work, he had the RFC to perform sedentary work (which, by definition, involves sitting, *see* 20 C.F.R. §§ 404.1567(a), 416.967(a)) with additional limitations, including: standing/walking for four hours in an eight-hour workday; occasionally stooping, crouching, and crawling; never climbing ladders, ropes, or scaffolds; avoiding workplace hazards such as unprotected heights and dangerous moving machinery; occasionally reaching overhead with left upper extremity; understanding, remembering, and carrying out simple, routine, and repetitive tasks; not interacting with the general public, but tolerating occasional, superficial interaction with supervisors and coworkers; no twisting or turning of the head to the ends of range of motion, but maintaining capability to turn his body to accommodate; and not performing tasks requiring him to hold his head in a fixed position.  R. 11, ID# 74.  Additionally, the ALJ found that Andres' productivity pace should not be dictated by an external source over which he lacked control, such as an assembly line or conveyor belt.  R. 11, ID# 74, 80, 82.[4]

On appeal, Andres focuses on the ALJ's alleged failure to include in the RFC finding Andres' sitting restrictions—that he cannot sit for long periods of time.  But Andres did not challenge the ALJ's sitting assessments until his district court reply brief (and did not raise any challenge to the ALJ's RFC in his merits brief).  *See* R. 15, ID# 1283 (merits brief); R. 19, ID# 1363 (reply brief).  He has therefore forfeited any argument on the subject here.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not properly raised in opening district court brief are waived).

Substantial evidence supports the ALJ's RFC finding in any event.  As the nineteen-page single-spaced decision reflects, the ALJ considered Andres' complaints of back pain, neck pain,

---

[4] In her appeal brief, the appellee states the ALJ found that Andres could sit for six hours in an eight-hour workday.  Appellee's Br. at 17.  That is not correct.  Only state agency reviewing physicians, Drs. Louis Goorey and Gerald Klyop, made that assessment.  R. 11, ID# 144, 171-72.

and left shoulder pain; as well as his medical treatments; physical therapy; ongoing clinical findings of decreased spinal range of motion, spinal tenderness, and positive facet loading and mental complaints. R. 11, ID# 75-80. The ALJ balanced these findings against other record proof showing that Andres nonetheless retained normal strength in the upper and lower extremities, normal gait and stance, and normal sensory findings. R.11, ID# 76 (citing ID# 414-15, 445, 448-49, 455, 597, 608, 693, 720, 727, 889, 895, 905-08, 914, 1229-31, 1243-44). Further, as the ALJ noted, x-rays consistently showed normal alignment without hardware complications after the September 2012 revision neck surgery. R. 11, ID# 77-78 (citing ID# 430-33, 436-39, 452, 714-15, 720-21, 906, 914-19, 1112-15, 1244, 1249-50).

The ALJ also properly considered Andres' noncompliant behavior, which undermined his credibility regarding pain. *See* 61 Fed. Reg. 34,483 (July 2, 1996) (describing SSR 96-7p and stating that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").[5] Andres abruptly stopped going to physical therapy in July 2014, R. 11, ID# 83 (citing ID# 870); stopped wearing a cervical collar after his initial surgery contrary to Dr. Medhkour's orders, R. 11, ID# 83 (citing ID# 507), which prompted Dr. Medhkour to place Andres in an invasive halo brace following the revision surgery, R. 11, ID# 507, 536-37; and continued to smoke despite recommendations by medical professionals to quit, *see* R. 11, ID# 442, 449, 474-75, 479, 486.

---

[5] This regulation has been replaced with a new ruling, SSR 16-3p, *see* 81 Fed. Reg. 14,166 (March 16, 2016). SSR 16-3p's substantive aspects do not apply retroactively, so SSR 96-7p controls here.

The ALJ also noted that Dr. Medkour determined that Andres was not a candidate for lumbar surgery. R. 11, ID# 83 (citing ID# 670-75).[6]

Andres claims that "[a] straight-forward reading of Dr. Kanney's record reinforces, for example, limited strength and control issues with Andres' abdominals, including limitations with his sitting . . . ." Appellant's Br. at 22. But he provides no citations to the record for this assertion. Further, Andres has failed to show that any of the physicians documented clinical findings consonant with his pain complaints, let alone assess any ongoing functional restrictions, including sitting limitations. Subjective complaints of pain alone do not support a disability finding. *See generally* 20 C.F.R. § 404.1529.

*Conclusion.* The ALJ's decision is entitled to substantial deference because she comprehensively discussed the objective evidence, while acknowledging that it supported the conclusion that Andres' severe impairments significantly affected his ability to perform certain work activities. Nonetheless, as the ALJ reasonably concluded, the objective medical and other evidence did not establish a complete inability to perform work with appropriate accommodations. *See* 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c). Andres failed to show that his impairments precluded performance of the restricted range of sedentary work set forth in the ALJ's RFC assessment. Therefore, we AFFIRM the decision of the district court affirming the final decision of the Commissioner.

---

[6] The ALJ also found that despite Andres' mental complaints, he never sought mental health treatment. R. 11, ID# 83. Andres' failure to seek treatment was just one factor in the mix; it was not a determinative factor in assessing Andres' credibility. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).