FILED

FEB 08 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MARITA GRAY,

          Plaintiff - Appellant,

  v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

          Defendant - Appellee.

No. 09-35212

D.C. No. 3:07-cv-00751-HA

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Submitted February 4, 2010[**]
Seattle, Washington

Before: RYMER, GOULD and BYBEE, Circuit Judges.

    Marita Gray appeals the district court's affirmance of the Commissioner of

Social Security's denial of her application for Social Security Disability Insurance

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36–3.

    [**]    The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

and Supplemental Security Income under Titles II and XVI of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

Gray argues that the ALJ erred at step two by determining certain impairments were nonsevere,[1] but any alleged error was harmless because the ALJ concluded that Gray's other medical problems were severe impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Gray argues that this became prejudicial error at step five because the ALJ did not consider her non-severe impairments in determining her residual functional capacity ("RFC"). We disagree. In determining Gray's RFC, the ALJ stated that she "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and cited to the pertinent regulations. The ALJ then discussed Gray's allegations of functional limitations resulting from cognitive problems, pain and physical impairments, and found Gray's testimony not fully credible.

Nor did the ALJ err in finding that Gray's mental impairments did not equal listed impairments 12.05B or 12.05C. Under both 12.05B and 12.05C, an IQ test must be "valid." 20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 12.05. The ALJ

---

[1] The parties are familiar with the factual and procedural history of this case and we do not recount it in detail here.

2

properly considered and evaluated the opinions of Dr. Starbird, Dr. Greif, and Dr. Crossen in determining that Gray's 2002 and 2004 IQ testing was not "valid." When medical records are at odds with each other or in any way conflict, it is the ALJ's role to assess and resolve conflicting medical evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 956–57 (9th Cir. 2002). As the ALJ noted, unlike Dr. Starbird—who based her opinion solely on Gray's self-reports and her 2002 IQ test results—Dr. Crossen also relied on Gray's 2004 IQ test results, Gray's medical records, and Gray's high school transcript. We conclude that this was a specific and legitimate reason for rejecting Dr. Starbird's opinion in favor of Dr. Crossen's. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). As for Dr. Greif, the ALJ did not reject Dr. Greif's opinion. Rather, Dr. Greif's conclusions were consistent with the ALJ's findings: Dr. Greif declined to pronounce Gray's testing valid because Gray's self-reports appeared to be unreliable.[2]

In addition to the conflicting physicians' opinions, other substantial evidence supported the ALJ's conclusion that Gray's mental impairments did not equal listed impairments. Gray's school records indicated that she did not attend special

---

[2] Dr. Greif's judgment that "on a practical level" Gray had "little hope of . . . establishing and maintaining work" is unrelated to IQ testing and is "reserved to the Commissioner." *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

education classes and were at odds with her purported inability to recite the alphabet. Both Dr. Starbird and Dr. Greif reported poor motivation in IQ testing, which decreased the reliability of the IQ tests. And the increase in Gray's test scores between 2002 and 2004 suggests that Gray's intellectual abilities were not adequately represented by the test scores. Moreover, Gray's failure to disclose her history of substance abuse to Drs. Starbird and Greif at the time of testing undermined the reliability of their evaluations. Dr. Crossen, on the other hand, had access to Gray's complete medical records, making Dr. Crossen's evaluation more reliable in comparison. *See Andrews*, 53 F.3d at 1042–43.

In determining Gray's RFC, the ALJ properly considered Princess Watson's lay testimony and gave germane reasons for deeming it "incomplete" and deserving of "less weight." As the ALJ noted, Watson observed that Gray gets "side tracked" during conversation, cannot "be around a lot of people at once," has "difficulty getting along with others," can be forgetful, cannot "pay her own bills," and might not be able to "keep up" at work, but this behavior could just as easily have been caused by substance abuse as by any inherent mental limitations. Watson's failure to discuss Gray's substance abuse—of which Gray alleged Watson was aware—raises doubts as to whether Watson told the whole story.

4

As for Gray's ability to sustain work activity on a "regular and continuing basis," the ALJ was not required to discuss this in determining Gray's RFC. The RFC assessment considers only medically determinable impairments, and Gray did not allege any impairment that would limit her ability to sustain such activity. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *cf. Reddick v. Chater*, 157 F.3d 715, 724–25 (9th Cir. 1998) (holding ALJ must consider ability to sustain regular work activity where claimant is impaired by Chronic Fatigue Syndrome). Gray was responsible for providing the evidence used to make the RFC determination, 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and the ALJ was not required to credit Gray's and Watson's testimony on this issue without objective evidence to support their claims. *See Magallanes*, 881 F.2d at 755.

To the extent Gray's challenge to the ALJ's step two determination can be construed as a challenge to the ALJ's RFC determination, the ALJ's assessment of the functional limitations posed by Gray's hip pain, back pain and cognitive impairments was supported by substantial evidence. The ALJ gave clear and convincing reasons for rejecting Gray's claims of severe hip and back pain. For example, as the ALJ observed, numerous physicians commented that Gray's claims of pain appeared to be the result of drug-seeking, a clear and convincing reason to discount a claimant's credibility about pain. *See Edlund v. Massanari*, 253 F.3d

5

1152, 1157–58 (9th Cir. 2001). The ALJ also found that Gray's lack of medical care was inconsistent with her reports of significant physical pain, and medical records indicated that Gray reported to doctors numerous times with back and hip pain and received mild or no treatment. Conservative treatment is another clear and convincing reason to discredit Gray's testimony. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007).

As for Gray's cognitive impairments, we have already concluded that the ALJ properly evaluated the medical evidence and properly relied on the opinion of Dr. Crossen. Moreover, as the ALJ observed, Gray had not "participated in significant treatment for mental impairments," which was a clear and convincing reason for discrediting Gray's testimony regarding those limitations. *Id.*

Finally, the ALJ did not err at step five in determining that Gray could perform work existing in significant numbers in the national economy. The ALJ's hypothetical to the vocational expert ("VE") was proper because it included all of the functional limitations the ALJ found were supported by substantial evidence.[3] *See Magallanes*, 881 F.2d at 756–57. Even assuming, *arguendo*, that two of the

---

[3] Gray alleges that she is "functionally illiterate," but the ALJ found that Gray had an eleventh-grade "limited" education. *See* 20 C.F.R. § 404.1564. This finding is supported by substantial evidence, including Gray's high school transcript and the fact that she filled out her own application for disability benefits.

6

three jobs named by the VE—"garment sorter" and "label coder"—were inconsistent with Gray's RFC, Gray does not dispute that the third job named by the VE, "hand bander," is consistent with the ALJ's RFC determination. The VE stated that there are 980 hand bander jobs in Oregon and 59,000 such jobs in the national economy. This constitutes a "significant number" of jobs, which further supports the ALJ's finding. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs in local area is a "significant number"); *Barker v. Sec'y of HHS*, 882 F.2d 1474, 1478–79 (9th Cir. 1989) (1,266 jobs in local economy is a "significant number"). If Gray could work as a hand bander, then she was not disabled within the meaning of the Social Security laws. The ALJ properly consulted a VE because Gray's RFC falls between two grid rules, and the ALJ was not required to find which grid rule better approximated Gray's limitations before doing so. *See Thomas*, 278 F.3d at 960–61.

**AFFIRMED.**