NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0212n.06

No. 20-1827

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| RHONDA LYNN CHICORA, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

**FILED**
Apr 21, 2021
DEBORAH S. HUNT, Clerk

BEFORE: KETHLEDGE, STRANCH, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. In 2015, Rhonda Chicora applied for disability and disability insurance benefits. An Administrative Law Judge denied her application, and the district court affirmed the ALJ's decision, granting the Commissioner of Social Security's motion for summary judgment. Chicora now appeals, arguing that the ALJ failed to adhere to the treating physician rule; that substantial evidence did not support the ALJ's determination that Chicora's impairments do not meet the requirements or their medical equivalence of certain listed disabilities in the Social Security Administration's regulations; and that the Commissioner failed to show that Chicora can perform any jobs in the national economy. For the following reasons, we affirm.

I.

Chicora has a GED and specialized training in medical administration. She last worked as a scheduler at a hospital.

Chicora first applied for disability benefits on October 15, 2012, alleging a disability onset date of October 30, 2011. An ALJ denied her application on March 22, 2014. After the Appeals

Council denied review of that first decision, Chicora applied for disability insurance benefits again, alleging the same onset date. When her second application was again denied, Chicora requested a hearing before an ALJ. She alleged that she had been suffering from depression and problems with her back and knees. The second ALJ recognized that the prior ALJ decision that Chicora had no disability was binding as to her condition before March 22, 2014. As to Chicora's condition after that date, the ALJ determined that Chicora had submitted new and material evidence that could be considered. But that evidence, the ALJ concluded, did not support a "substantially different finding" regarding Chicora's alleged disability status. Thus, the ALJ held that Chicora was not disabled under the Social Security Act from March 23, 2014 through December 31, 2015, the last date of her insured status. Specifically, the ALJ found that Chicora did not have an impairment or combination of impairments as severe as one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 and that, despite her ailments and moderate limitations, Chicora retained the residual functional capacity to perform some kinds of work for jobs that existed in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920.

The Appeals Council denied review, at which point the ALJ's decision became final. *See* 20 C.F.R. § 422.210(a). Chicora then sought judicial review in the U.S. District Court for the Eastern District of Michigan. After Chicora and the Commissioner filed cross-motions for summary judgment, the district court referred the matter to a magistrate judge, who issued a report and recommendation to deny Chicora's motion and grant the Commissioner's motion. *Chicora v. Comm'r of Soc. Sec. Admin.* (*Chicora I*), No. 2:18-cv-12636, 2020 WL 2392237 (E.D. Mich. Jan. 27, 2020). The district court overruled Chicora's objections to the report and recommendation, granted the Commissioner's motion, denied Chicora's motion, and affirmed the ALJ's decision.

2

*Chicora v. Comm'r of Soc. Sec.* (*Chicora II*), No. 18-12636, 2020 WL 1502005 (E.D. Mich. Mar. 30, 2020). Chicora now appeals.

## II.

We review de novo a district court's order regarding a determination of Social Security benefits. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). But our review is limited to (1) whether the ALJ used the "correct legal standards" and (2) whether the ALJ's findings of fact were supported by substantial evidence in the record. *Id.* When substantial evidence supports the ALJ's denial of benefits, we must affirm the Commissioner's conclusions, even if substantial evidence would also have supported the opposite conclusion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). However, even if otherwise substantial evidence supports the Commissioner's decision, the ALJ's failure to follow "a mandatory regulation that 'is intended to confer a procedural protection' for claimants" warrants reversal. *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 436 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

## III.

### A. APPLICATION OF THE TREATING PHYSICIAN RULE

Chicora first argues that the ALJ violated the treating physician rule by failing to give Dr. Jane Castillo's medical opinion controlling weight with regard to whether Chicora's impairments met the requirements or their medical equivalence for Listing 1.04 (for certain disorders of the spine), and Listing 12.04 (for certain depressive, bipolar, and related disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. She contends that the ALJ ignored "new evidence" regarding Dr. Castillo's credentials, including the fact that 20% of Dr. Castillo's practice is devoted to psychiatric illnesses,

Dr. Castillo's other experience treating mental illness, and Dr. Castillo's deposition testimony concerning Chicora's history of orthopedic problems.

The treating physician requirement is a mandatory procedural regulation. *Shields*, 732 F. App'x at 436–37. A "treating source" is an

> acceptable medical source who provides . . . or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant] . . . . with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Because a treating physician is "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence," the ALJ must give a treating physician's medical opinion controlling weight unless it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques [or] is . . . inconsistent with the other substantial evidence in [the claimant's] case record." §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must provide "good reasons" for not according controlling weight to the treating physician in the benefits decision. *Id.* In explaining those good reasons and in determining how much weight to give to a treating physician's medical opinion, the ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) whether the medical opinion is consistent with the record as a whole; (5) the degree to which the medical opinion is related to a specialist's area of specialty; and (6) other factors "which tend to support or contradict the medical opinion." §§ 404.1527(c)(2)(i)–(ii), 416.927(c)(3)–(6); *see Wilson*, 378 F.3d at 544. An ALJ's failure to abide by the good-reasons requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may

be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Here, the ALJ gave the following explanation for minimizing the weight of Dr. Castillo's medical opinion:

> I have considered the deposition testimony of Jane Castillo, MD, the claimant's primary physician. First, Dr. Castillo opined the claimant was totally disabled . . . , and the severity of the claimant's impairments meets listings 1.04 and 12.04 . . . . The first opinion expresses an ultimate conclusion of disability that, in this administrative process, is reserved for the Commissioner of Social Security. Additionally, both opinions are inconsistent with the physician's own treatment notes and examination findings that reveal little functional limitation or physical abnormality as described above. As such, I give the opinions of Dr. Castillo little weight.

The district court held that the above paragraph, in conjunction with the ALJ's referenced discussion of Dr. Castillo's treatment notes and examination findings, satisfied the good-reasons requirement. *Chicora II*, 2020 WL 1502005, at *3. We agree.

Chicora does not dispute that the ALJ was correct to refuse to adopt Dr. Castillo's ultimate conclusion of disability. *See* 20 C.F.R. § 404.1527(d). Instead, she focuses on Dr. Castillo's opinion with regard to Listings 1.04 and 12.04. In doing so, she largely makes conclusory statements that the ALJ "cherry picked" the record to "subvert[]" Dr. Castillo's findings. She fails to point to anything in the record that contradicts the ALJ's discussion of Dr. Castillo's treatment notes and examination findings.

The ALJ's explanation goes directly to the supportability and consistency factors. The ALJ cited specific statements in Dr. Castillo's own treatment notes and examination findings that fail to support her opinion that Chicora meets the requirements or had an impairment or combination of impairments that medically equaled the severity of Listings 1.04 and 12.04. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (holding that the ALJ

"reasonably discounted [the treating physician's] medical opinion" where it was "inconsistent with his own treatment notes from the relevant period"). As the district court noted, the ALJ also addressed the specialization factor by adopting the prior ALJ's finding that Dr. Castillo's opinion regarding Chicora's alleged depression was outside her area of expertise. *Chicora II*, 2020 WL 1502005, at *3. Chicora does not explain how Dr. Castillo's credentials or the percentage of her practice devoted to psychiatric illnesses constitute new evidence. And although the regulation requires the ALJ to consider all of the factors listed in 20 C.F.R. § 404.1527(c)(2)–(6) when giving a treating physician less-than-controlling weight, the ALJ need only give "good reasons" in the opinion—not an "exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Furthermore, "the mere existence of a contrary opinion" or piece of evidence in the record does not undermine the ALJ's notice of good reasons. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). The ALJ's explanation satisfies the goals of the good-reasons requirement: to enable the claimant to understand her case's disposition and to enable "meaningful review of the ALJ's application of the [treating physician] rule." *Wilson*, 378 F.3d at 544.[1]

B.  SUBSTANTIAL EVIDENCE TO SUPPORT FINDING REGARDING LISTING 1.04(A)

Next, Chicora contends that substantial evidence did not support the ALJ's finding that her impairments do not meet or are not medically equivalent to the requirements of Listing 1.04(A). She largely argues that substantial evidence could support a finding that she satisfies the requirements for Listing 1.04(A) and that the ALJ "cherry-picked" the record by ignoring, for

---

[1] Chicora also briefly mentions an argument that the ALJ erred because she met the requirements of Listings 12.04 and 12.06. To the extent that she raises an argument distinct from treating physician rule challenge, she has forfeited it. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995))).

example, Dr. Castillo's testimony and Chicora's own testimony. Those arguments misconstrue the standard for substantial-evidence review.

We affirm if the ALJ's decision is supported by substantial evidence, even if Chicora can show that "substantial evidence also supports the opposite conclusion." *Emard*, 953 F.3d at 849 (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197 (1938)). In making that determination, we may assess neither credibility nor conflicts in evidence. *Id.* Thus, claims that the ALJ "cherry-picked" the record are "seldom successful" because they essentially amount to a request that the court "re-weigh record evidence," which we may not do. *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). To prove that her impairments satisfy a particular Listing, Chicora had to show that her impairments meet each of the medical criteria or that her unlisted impairment or combination thereof is "equal in severity to *all* the criteria for the one most similar listed impairment." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 414–15 (6th Cir. 2020) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Here, the ALJ adequately explained that medical records during the relevant period did not support a finding that Chicora satisfied the requirements of Listing 1.04(A) or their medical equivalence.[2] Specifically, the ALJ pointed to Dr. Castillo's notes stating that (1) Chicora had no myalgias, back pain or joint pain in March 2015; (2) Chicora suffered from "no sensory deficits and [her] deep tendon reflexes were symmetrical" in June 2015; and (3) Chicora demonstrated "normal musculoskeletal ranges of motion with no edema or tenderness" in August 2015. We also

---

[2] The criteria for Listing 1.04(A) are as follows: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

review the record as a whole when assessing whether substantial evidence supported the ALJ's decision. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 527 (6th Cir. 2014). Dr. Castillo's notes do not indicate that Chicora had any limitation of motion, neurological or sensory deficits, or myalgias or falls in September 2014, despite her showing pain on flexion and extension of the lumbosacral spine. In December 2015, another doctor's evaluation also noted that her "[p]osture and gait were unremarkable." Thus, the ALJ's determination regarding Listing 1.04(A) was supported by substantial evidence.

C. SUBSTANTIAL EVIDENCE REGARDING VOCATIONAL TESTIMONY

Finally, Chicora argues that the ALJ did not sufficiently demonstrate that there are jobs in the national economy that Chicora is able to perform. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

The ALJ asked the vocational expert to address two hypotheticals. First, the ALJ presented a hypothetical person with Chicora's limitations as the ALJ later found them to exist. Second, the ALJ presented a hypothetical person with the same limitations as the first hypothetical person, but who would also be "off-task, at least, 25% of the work day[] and would be absent from work four or more days per month."

Because the vocational expert testified that no jobs exist in the national economy for the second hypothetical person, Chicora says that no jobs were available for her to perform. She asserts that the ALJ's second hypothetical question applies to her job prospects based on Dr. Castillo's testimony. But she fails to cite any evidence that the second hypothetical was more applicable to her case than the first, which elicited testimony that she could perform jobs in

8

occupations such as that of an addressor, production inspector, or assembler. An ALJ "may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations." *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). Chicora's argument about which hypothetical applies to her case amounts to nothing more than an attempt to "partially shift the burden of proof required of a claimant" to prove her residual function capacity "to the Commissioner." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999). Ultimately, Chicora offers no reason to question the substantial evidence that supports the ALJ's determination that jobs existed in significant numbers in the national economy that Chicora could have performed.

IV.

Accordingly, we affirm.