NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0284n.06

Case No. 22-4026

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>JAMES R. PRESTON,</td><td>)</td><td rowspan="3"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE SOUTHERN DISTRICT OF</td></tr>
<tr><td>COMMISSIONER OF SOCIAL SECURITY,</td><td>)</td><td>OHIO</td></tr>
<tr><td style="padding-left:2em">Defendant-Appellee.</td><td>)</td><td style="text-align:right">OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

FILED
Jun 20, 2023
DEBORAH S. HUNT, Clerk

Before: COLE, READLER, and DAVIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** James Preston is a former truck driver who suffers from various physical and mental ailments. Everyone agrees that since 2012 these ailments were disabling and entitled Preston to certain benefits under the Social Security Act. But Preston maintains that his disability status began a decade earlier, which, if true, would qualify him for additional benefits. An Administrative Law Judge concluded that Preston was not disabled during the relevant time period and therefore denied his application for additional benefits. Preston then unsuccessfully sought review of that order in federal district court. On appeal, we affirm.

## I.

James Preston injured his back in 1995 while working as a truck driver. This injury worsened and led to other physical and mental maladies, ultimately forcing him to stop working and seek two types of Social Security benefits. First, he sought Supplemental Security Income benefits under Title XVI, a means-tested federal assistance program. *See* 42 U.S.C. § 1381.

Finding that Preston had been disabled since February 2012, the Social Security Administration granted Preston's request for Title XVI benefits, in part due to post-2008 assessments of his mental health. Second, and at issue in this appeal, Preston sought Disability Insurance Benefits under Title II, a program that provides assistance to insured individuals based on their earnings records, regardless of financial need. *See id.* § 423. In his 2012 Disability Insurance Benefits application, Preston alleged he had been disabled since May 2, 2002. Based on his past earnings, Preston, if disabled at that onset date, would have Title II coverage through December 31, 2007. Many years and many trips through the Social Security administrative appeal process later, we arrive at the decision at issue today: an ALJ's January 2022 denial of Preston's Disability Insurance Benefits request.

After examining Preston's prior testimony and years of relevant treatment records, the ALJ concluded that during the Title II eligibility period Preston retained the ability (in Social Security Act parlance, the residual functional capacity, or "RFC") to perform a "range of sedentary work" that involved simple and multi-step tasks with superficial social interactions. Although this finding meant that Preston could not return to work as a truck driver, the ALJ, relying on interrogatories answered by a vocational expert, determined that jobs existed in significant numbers in the national economy that Preston could still perform. As a result, Preston was found not to be disabled during the Title II eligibility period.

Preston opted to bypass the Social Security Appeals Council and instead went straight to district court to challenge the ALJ's decision. *See* 20 C.F.R. § 404.984(d). Both parties consented to proceed before a magistrate judge. Following briefing, the magistrate judge issued a thorough opinion and order affirming the ALJ's denial of Preston's Disability Insurance Benefits request. This appeal followed.

2

**II.**

Preston challenges the ALJ's finding that he was not disabled during the relevant period and therefore ineligible for Disability Insurance Benefits. Our role here is a modest one. We are not the ALJ, so we do not "weigh evidence, assess credibility, or resolve conflicts in testimony[.]" *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Instead, we must affirm the ALJ's conclusion unless the ALJ "failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quotation marks and citation omitted). The "substantial-evidence standard" is not overly demanding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It simply requires "more than a mere scintilla" of evidence, asking whether there is "relevant evidence" in the administrative record that a "reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks and citations omitted).

**A.**

With this rubric in mind, we find no fault in the ALJ's disability determination. To show that he was disabled during the relevant period, Preston needed to demonstrate he could not "engage in any substantial gainful activity by reason of" a physical or mental impairment that, at the very least, has or will last for a "continuous period of not less than 12 months." *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (quotation marks and citations omitted); *see also* 42 U.S.C. § 423(d)(1)(A). He failed to meet this high bar. Start with the ALJ's views on Preston's RFC. Preston's central physical ailments were his back and hip pain. As to the former, the ALJ cited record evidence that repeatedly described Preston's back ailments as being "mild" or "minimal" in nature throughout the relevant period. Preston's hip pain presented a bigger problem.

3

His condition was serious enough to warrant a total hip replacement. And his condition likewise left him unable to work just before and after those procedures. But even then, disability status requires more than a temporary inability to work. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006) (en banc) ("Claimants with impairments of insufficient duration are not disabled.").

To this end, the ALJ discussed ample evidence showing that Preston's hip condition did not prevent him from doing sedentary work for any extended period before or after surgery. Take, for instance, his treating physician's views expressed in the months prior to his first surgery. The doctor repeatedly noted that Preston could "stand up and sit down without too much difficulty." Similar treatment notes exist prior to his right hip replacement. And after Preston's first surgery, he reported only "slight pain" that dissipated, and his physician recommended "conservative" treatment for his left hip pain going forward. (Preston's right hip replacement occurred after the Title II eligibility period, so all agree that any resulting injuries are irrelevant for determining Preston's eligibility for Disability Insurance Benefits).

In terms of mental functioning, the ALJ adequately supported a finding of "no more than moderate mental limitation." The record contained limited evidence about Preston's mental health during the relevant period, as Preston only began formal mental health treatment in 2009. The little evidence that did exist, as the ALJ rightfully observed, tracked his RFC and showed that Preston underwent only limited mental health treatment during the relevant period. For instance, the ALJ noted record evidence showing Preston's "mood and affect" to be "grossly unremarkable" and that he could perform modest tasks with superficial interactions with colleagues. All said, the ALJ's finding that Preston could "perform a range of sedentary work" that involved simple and

4

multi-step tasks with superficial social interactions during the relevant period has sufficient support in the record.

Finally, substantial evidence supported the ALJ's view that jobs existed in significant numbers in the national economy that Preston could perform during the Title II eligibility period, given his background and RFC. The ALJ reasonably relied on the views of a vocational expert who opined that given Preston's age, education, work experience, and RFC, he would have been able to perform jobs such as a table worker, inspector, or sorter, of which over one hundred thousand were available in the national economy. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). Given all of this, we find nothing amiss with the ALJ's ultimate disability determination.

**B.**

Preston sees things differently, largely arguing that the evidence the ALJ favored was flawed and that better record evidence supported a disability finding. But we are not the ALJ, and we have no license to reassess the record anew. *See Dyson*, 786 F. App'x at 588. The existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). And as there is substantial evidence supporting the ALJ's disability determination here, we must affirm. *See Biestek*, 139 S. Ct. at 1154 ("[T]he threshold for [substantial evidence] is not high.").

Even then, there is little to cast doubt on the ALJ's assessment. Start with Preston's concerns with some of the evidence on which the ALJ relied. For instance, Preston criticizes one doctor's assessment that otherwise supported Preston's ability to work because that doctor

5

observed Preston using a cane, undermining the RFC assessment. But nowhere did that doctor find that Preston *required* the use of a cane; instead, that doctor found Preston had a "satisfactory gait" and engaged in other activities consistent with being able to perform sedentary work. Preston likewise characterizes another doctor's assessment as incomplete in that he left part of a medical form blank. The legal significance of the blank section of the form, however, is never explained by Preston. At any rate, substantial evidence does not require perfect evidence. *See Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (recognizing that we look for "fatal gaps or contradictions" in the ALJ's opinion, as opposed to "nitpicking at it") (citations omitted). The ALJ reasonably relied on the doctor's articulated view that Preston could engage in certain activity, which amounts to "relevant evidence" supporting the proffered RFC. *See Biestek*, 139 S. Ct. at 1154.

Next, turn to the evidence that Preston said should have been the basis for the ALJ's decision. Preston points to evidence that he had "good and bad" days and that his physical condition was so bad that he needed steroid injections and a total hip replacement. Put another way, Preston seems to suggest that substantively this evidence pointed to a disability finding. Even accepting Preston's invitation to weigh this evidence against what the ALJ found to be more persuasive, this evidence at best shows that Preston's conditions, while serious, were intermittent and episodic. This is a far cry from an impairment that lasts or will last for a continuous period of at least 12 months needed to establish a disability. *See Combs*, 459 F.3d at 642–43. Preston also argues that, as a matter of process, the ALJ should have addressed every assessment made by Preston's treating physicians, including several assessments about Preston's mental health that were relevant to his Title XVI benefits grant. But much of the supposedly neglected assessments Preston cites contain only Preston's subjective complaints about his health, complaints the ALJ

6

need not credit absent supporting medical evidence. *See Bentley v. Comm'r of Soc. Sec.*, 23 F. App'x 434, 436 (6th Cir. 2001) (citing *Fraley v. Sec'y of Health & Hum. Servs.*, 733 F.2d 437, 440 (6th Cir. 1984)). Other evidence Preston points to include assessments made after the relevant time. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (recognizing that affirmance is proper when an ALJ's decision is supported by substantial evidence even if medical opinions from after the date last insured "relate back" to prior conditions). In any event, we have never required that an ALJ discuss every piece of evidence in the record. *See Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020). So long as the ALJ considers all medically determinable impairments and supports her resulting opinion with substantial evidence, that decision should stand. 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

As a final salvo, Preston highlights the interrogatories sent to the vocational expert. To Preston's mind, the ALJ erred by using the term "superficial" in the interrogatories with regard to Preston's ability to interact with others. Preston says the ALJ should have better explained what was meant by that term. But the record evidence supported the view that Preston's mental capabilities during the relevant period allowed him to perform modest tasks with limited interactions with colleagues, providing a basis for the use of the word "superficial" in the RFC. Indeed, the ALJ's use of the term "superficial" parrots a report of one of the psychologists who assessed Preston. We find nothing wrong in the ALJ's use of the term "superficial," a "well-recognized work-related limitation," in the interrogatories to the vocational expert. *See Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021); *see also Lambert v. Kijakazi*, No. 19-35360, 2022 WL 1537359, at *1 (9th Cir. May 16, 2022) (recognizing the appropriateness of an ALJ "translating and incorporating clinical findings into a

7

succinct RFC" through the use of term "superficial" (quotation marks and citation omitted)). In turn, the ALJ did not err in relying on the expert's response to those interrogatories. *See Smith*, 307 F.3d at 378.

## III.

We affirm the judgment of the district court.